**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Daniel G Buff,<br>Plaintiff,<br>v.<br>United States of America,<br>Defendant. | No. CV-26-00508-TUC-JCH<br>**ORDER** |

On October 1, 2026, Plaintiff Daniel G. Buff filed a Complaint for a Civil Case under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680 (Doc. 1), and an Application to Proceed *In Forma Pauperis* (the "IFP Application") (Doc. 2). The Court will deny the IFP Application without prejudice, direct the Clerk of Court to seal it, and dismiss the Complaint for failure to state a claim with leave to file an amended complaint within 30 days.

## I. Application to Proceed *In Forma Pauperis*

Under 28 U.S.C. § 1915(a)(1), a court may authorize a person to commence an action without prepaying the filing fee upon an adequate showing of indigency. An applicant need not be "absolutely destitute," but must show that he cannot pay the filing fee and still afford the necessities of life. *Escobedo v. Applebees*, 787 F.3d 1226, 1234–35 (9th Cir. 2015). The applicant must establish his poverty "with some particularity, definiteness and certainty." *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981). A court may make a factual inquiry when the information supplied does not permit it to

determine whether the applicant is unable to pay. *Id.*

Plaintiff reports average monthly retirement income of $1,585 and disability income of $4,194, totaling $5,779. Doc. 2 at 2. He reports $200 in a checking account and identifies two minor children who depend on him for support. *Id.* at 2–3. His reported monthly expenses total approximately $5,775 and include $2,100 for housing, $1,000 for utilities, $1,500 for food, and $375 for vehicle installment payments. *Id.* at 4–5.

The Court questions whether Plaintiff's reported expenses accurately reflect his financial circumstances. Although Plaintiff receives nearly $6,000 in monthly income, his reported expenses consume virtually that entire amount, leaving only $4 per month. Several of those expenses appear unusually high. In particular, Plaintiff reports $1,000 per month for utilities, an amount that warrants further explanation given the cost of ordinary household utilities in Tucson, Arizona. He also reports $1,500 per month for food and $300 per month for home maintenance. *Id.* at 4. The Court recognizes that the IFP Application requests only the total amount for each expense category and does not require an itemized explanation. Nevertheless, given Plaintiff's substantial monthly income and the amounts reported, the Court requires additional information to determine whether those expenses are reasonable and whether paying the $405 filing and administrative fees would deprive Plaintiff or his dependents of the necessities of life.

The Court is also concerned that Plaintiff left the entire asset section blank, including the entries for a home, vehicles, and other valuable property. *Id.* at 3. Although Plaintiff reports $2,100 per month in housing expenses, the IFP Application does not establish whether he rents or owns his residence. He also reports $375 in monthly vehicle installment payments but does not identify the vehicle or its value. *Id.* at 3–4. These omissions prevent the Court from fully assessing Plaintiff's financial resources. Plaintiff bears the burden of establishing his inability to pay the filing fee with particularity, definiteness, and certainty. *McQuade*, 647 F.2d at 940. On the present record, the Court is not persuaded that Plaintiff has met that burden. His reported monthly income suggests that he may be capable of paying the filing fee, and the Court requires further information

before determining whether his expenses justify waiving that obligation.

The Court will defer ruling on the IFP Application and give Plaintiff 30 days to submit a supplement addressing these concerns. Plaintiff must (1) identify his cash on hand and any home, vehicle, or other valuable property he owns, including each asset's approximate value and outstanding loan balance; (2) clarify whether his reported $2,100 monthly housing expense represents rent or a mortgage payment; (3) provide an itemized breakdown of the reported $1,000 monthly utilities expense, identifying each utility service and its average monthly cost, with supporting billing statements; and (4) explain the reported $1,500 monthly food expense and $300 monthly home-maintenance expense. If Plaintiff has no cash or owns no such property, he must expressly state so. The Court emphasizes that Plaintiff's income is substantial and that he must demonstrate why payment of the filing fee would prevent him from affording the necessities of life. **Any supplement must identify Plaintiff's minor children by their initials only**, consistent with Federal Rule of Civil Procedure 5.2(a)(3). Plaintiff may instead pay the $405 filing and administrative fees within that period.

## II. Screening of the Complaint

### A. Legal Standard

The Court must screen *in forma pauperis* complaints under § 1915(e)(2) and dismiss a case if the Court determines the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Instead, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Iqbal*, 566 at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Still, the Court must "construe pro se filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). If the Court determines a complaint could be cured by the allegation of additional facts, a *pro se* litigant is entitled to an opportunity to amend that complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000) (en banc).

**B. Complaint**

Plaintiff alleges that he participated in the Department of Veterans Affairs' ("VA") Compensated Work Therapy ("CWT") program in Tucson, Arizona. Doc. 1 at 4. Beginning around February 2025, another participant allegedly repeatedly harassed and threatened him at the worksite. *Id.* Plaintiff alleges that he reported the harassment to CWT staff multiple times, but the VA failed to stop it. *Id.* at 6. Because he feared for his safety, Plaintiff stopped attending in May 2025 and lost approximately $1,100 in monthly program income. *Id.*

Plaintiff also alleges that, after his discharge, CWT coordinator Patrick Gipson accessed his case notes without authorization on at least two occasions. *Id.* He further alleges that false and misleading entries concerning these events were placed in his VA medical records. *Id.* Plaintiff alleges that he submitted an administrative tort claim to the VA in November 2025 seeking $750,000, and that the VA never issued a final denial. *Id.* Plaintiff filed this action on October 1, 2026, seeking $750,000 for lost income, emotional distress, and other harm caused by the alleged negligence. *Id.* at 1, 4–5.

The Complaint does not separately number causes of action. Liberally construed, it

asserts an FTCA negligence claim based on the VA's failure to address reported threats in the CWT program and a purported separate claim based on access to and entries in Plaintiff's medical records.

**1. Federal Tort Claims Act and Administrative Exhaustion**

The United States is immune from suit except to the extent it has waived sovereign immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA provides a limited waiver for injury caused by a federal employee's negligent or wrongful act or omission within the scope of employment, under circumstances in which a private person would be liable under the law of the place where the conduct occurred. 28 U.S.C. § 1346(b)(1); *Meyer*, 510 U.S. at 477. Because the alleged conduct occurred in Arizona, Arizona tort law supplies the substantive rules of liability. *See Meyer*, 510 U.S. at 478; *Richards v. United States*, 369 U.S. 1, 11–12 (1962).

Before bringing an FTCA claim, a claimant must present it to the appropriate federal agency and either receive a final written denial or wait six months without a final disposition. 28 U.S.C. § 2675(a); *Jerves v. United States*, 966 F.2d 517, 518–19 (9th Cir. 1992). After six months of agency inaction, the claimant may treat the claim as denied and file suit. 28 U.S.C. § 2675(a).

Plaintiff alleges that he filed an administrative tort claim with the VA in November 2025 demanding the same $750,000 he seeks here, and that the VA did not issue a final denial. Doc. 1 at 6. More than six months elapsed before he filed this action on October 1, 2026. *Id.* at 1. Those allegations sufficiently plead exhaustion for initial screening. The lack of a final written denial require dismissal. This determination does not prevent the United States from contesting the presentment, receipt, or scope of the administrative claim after service.

**2. Failure to Address Threats in the CWT Program**

Under Arizona law, negligence requires a duty of care, breach, a causal connection between the breach and injury, and actual damages. *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). A duty may arise from a recognized relationship or an undertaking by the

defendant. *Id.* at 232.

Plaintiff alleges that he participated in a therapeutic work program administered by the VA, another participant repeatedly threatened him at the worksite, and the VA staff responsible for the program failed to address those threats despite repeated reports. Doc. 1 at 4, 6. Plaintiff claims his injury is that he stopped attending because he feared for his safety and lost approximately $1,100 in monthly income. *Id.* at 6. Read liberally, these allegations plausibly assert that VA employees negligently administered the program and failed to exercise reasonable care toward a participant, causing him financial harm.

The claim rests on the alleged omissions of VA staff administering the program. Plaintiff does not need to establish that the other participant was a federal employee to pursue a claim based on the independent negligence of VA employees. Nor does the intentional character of the reported threats defeat that negligence theory. *See Sheridan v. United States*, 487 U.S. 392, 401–03 (1988).

The allegations are sufficient for initial screening. The FTCA negligence claim based on the VA's response to reported threats may proceed against the United States once Plaintiff pays the filing fee or obtains leave to proceed *in forma pauperis*.

**3. Medical Records**

The medical-record allegations do not presently state a separate claim. Plaintiff alleges that Gipson accessed case notes twice without authorization, but does not describe when the access occurred, its purpose, or the circumstances making it improper. Doc. 1 at 6. He also alleges false and misleading entries, but does not identify their content, who made them, or how they affected him. *Id.* The Complaint does not connect either the access or the entries to a particular injury. Its allegations that Plaintiff lost program income concern his departure from the worksite before the alleged post-discharge access. *Id.*

The FTCA does not create liability merely because a record was accessed or Plaintiff disagrees with an entry. The allegations must support an actionable tort under the governing state law and connect the employee's conduct to the claimed harm. 28 U.S.C. § 1346(b)(1). As pleaded, the two general assertions about the records do not supply enough

facts to permit that determination. *See Iqbal*, 556 U.S. at 678. To the extent Plaintiff seeks to assert a separate FTCA claim based on his medical records, that claim will be dismissed without prejudice and with leave to amend. This ruling does not prevent Plaintiff from relying on relevant records as evidence supporting his surviving negligence claim.

**III. Leave to Amend**

Plaintiff may file a First Amended Complaint ("FAC") within 30 days to cure the medical-record claim. If he elects to amend, he must describe the challenged access or entries, explain why the conduct was wrongful, and allege the harm caused by it. Plaintiff should identify the employees involved and their conduct as clearly as he can. He need not attach evidence or prove his allegations at this stage.

The FAC must be retyped or rewritten in its entirety and must be complete in itself; it may not incorporate the original Complaint by reference. *See* LRCiv 15.1. It must include the surviving FTCA negligence claim if Plaintiff wishes to continue pursuing it. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

Amendment is optional. If Plaintiff does not timely file a FAC, this action will proceed only on the surviving FTCA negligence claim, provided he satisfies the filing-fee requirement. Filing a FAC does not excuse Plaintiff from paying the fee or submitting a complete renewed IFP application within the same 30-day period. The Court will address service after resolving the fee requirement and, if necessary, screening the FAC.

**IV. Warnings**

Plaintiff must file and serve a notice of a change of address in accordance with LRCiv. 83.3(d). Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

///

## V. Order

Accordingly,

**IT IS ORDERED** that ruling on Plaintiff's IFP Application (Doc. 2) is **DEFERRED** pending submission of the supplemental financial information required by this Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **SEAL** Plaintiff's IFP Application (Doc. 2) because it contains minor children's unredacted names. Any supplemental filing must identify minor children by their initials only, consistent with Federal Rule of Civil Procedure 5.2(a)(3).

**IT IS FURTHER ORDERED** that, within 30 days of the date of this Order, Plaintiff must either pay the $405 filing and administrative fees or file a supplement to his IFP Application providing the financial information identified above.

**IT IS FURTHER ORDERED** that Plaintiff's FTCA negligence claim based on the VA's failure to address reported threats in the CWT program sufficiently states a claim for initial screening and may proceed against the United States once the filing-fee requirement is satisfied. This determination is without prejudice to the United States raising available defenses after service.

**IT IS FURTHER ORDERED** that, to the extent the Complaint asserts a separate FTCA claim based on access to or entries in Plaintiff's medical records, that claim is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. Plaintiff may file a FAC curing the identified deficiencies within 30 days of the date of this Order. If he does not amend, the surviving FTCA negligence claim will remain pending, subject to compliance with the filing-fee requirement.

**IT IS FURTHER ORDERED** that no summons shall issue and service shall not proceed until further order of the Court after Plaintiff pays the filing fee or establishes his entitlement to proceed *in forma pauperis* status.

**IT IS FINALLY ORDERED** that, if Plaintiff neither pays the filing fee nor files a renewed IFP application within 30 days of the date of this Order, the Clerk of Court shall, without further notice, enter judgment dismissing this action without prejudice for failure

to comply with this Order. If Plaintiff timely files a renewed application, the Court will rule on that application before determining whether dismissal or service is appropriate.

Dated this 8th day of October, 2026.

John C. Hinderaker
United States District Judge